**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **LEEANN (FRANCO) CAMPOS** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 2:17-cv-238** |
| | § | **JURY TRIAL** |
| **PAUL A. KENNEDY, III, D.D.S., P.C.,** | § | |
| *d/b/a* **KENNEDY DENTAL CARE** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**NOW COMES** LeeAnn (Franco) Campos (hereinafter "Plaintiff"), filing this her *Plaintiff's Original Complaint*, complaining of Paul A. Kennedy, III, D.D.S., P.C., *d/b/a* Kennedy Dental Care (hereinafter "Defendant"). In support of same, Plaintiff would show unto this Honorable Court as follows:

## I.
### PARTIES

1.　　Plaintiff is a female citizen of the United States and a Texas resident, residing in Corpus Christi, Nueces County, Texas.

2.　　Defendant is a domestic professtional corporation authorized to do business in the State of Texas, and can be served by way of process via its registered agent, to wit: Paul A. Kennedy, III, at 6200 Saratoga Blvd., Corpus Christi, Texas 78414.

3.　　Defendant, at all relevant times hereto, was an employer as defined by and within the meaning of the Americans With Disabilities Act of 1990 (hereinafter "ADA"), codified at 42 U.S.C. §12101, the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §2611, and is engaged in interstate commerce while employing more than fifteen (15) persons.

**II.**
**JURISDICTION AND VENUE**

4.     Plaintiff brings this action for compensation and other relief for violations under the FMLA and the ADA, thereby invoking the federal question jurisdiction conferred upon this Court by 28 U.S.C. **§**1331.

5.     Plaintiff timely filed a Notice of Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), case number 451-2016-00900.

6.     On April 14, 2017, Plaintiff received a *Notice of Right to Sue* from the EEOC.

7.     Plaintiff has therefore complied with all conditions precedent and exhausted all administrative remedies prior to filing suit.   Plaintiff now timely files this, her *Plaintiff's Original Complaint*, within ninety (90) days of receiving her *Notice of Right to Sue*.

8.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims herein occurred in said District.

**III.**
**FACTS**

9.     On or about June 15, 2007, Plaintiff was hired by Defendant as a registered Dental Assistant earning $16.00 per hour. Between Plaintiff's date of hire and date of termination – over seven years later – Plaintiff worked at all four of Defendant's locations in various Dental Assistant positions. Eventually, on or about 2013, Plaintiff was transferred to Defendant's call center where she worked as a Credentialing Coordinator earning

10.     On or about 2011, Plaintiff was Diagnosed ADHD – information she shared immediately with Beverly Hayes, who is Defendant's Business Administrator/HR Manager, and was Plaintiff's supervisor.

11.     On or about February or March 2014, Plaintiff was diagnosed with an anxiety disorder and prescribed medication. Prior to seeking medical treatment for anxiety, Plaintiff discussed her increased anxiety with Hayes who was the driving force behind Plaintiff's choice to seek medical treatment. Hayes was the one who noticed that Plaintiff was overly anxious and encouraged her to visit her doctor and to ask for medications to help control Plaintiff's anxiety. After Plaintiff sought medical treatment and was diagnosed, she quickly informed Hayes that she had visited the doctor and shared her diagnosis.

12.     Between November 2014, and January 2015, Plaintiff began suffering from increasing pain in her hip and spine. Eventually she visited her primary care physician, Dr. George Benavidez, who diagnosed Plainitff with arthritis.

13.     Shortly thereafter, on or about February 14, 2015, Plaintiff visited Dr. Daxton Krugman – a chiropractor – regarding her increased back pain and was further diagnosed with lower back pain from a herniated disc in segment L4-L5. Dr. Krugman ordered chiropractic treatments three to four times per week, as needed.

14.     As an accommodation for Plaintiff's disabilities, Plaintiff simply asked that she be allowed to attend her prescribed and recommended medical treatments and appointments. Plaintiff always provided documentation and doctor's notes to Hayes for missing work whenever she was asked to provide documentation and/or needed to miss work for treatment or an appointment related to one or all of her disabilities.

15.     At some point, Hayes began harassing Plaintiff for missing work (for disability-related appointments) by having other staff members monitor her phone conversations and her work. Hayes also began making false accusations. For instance, Hayes questioned Plaintiff about the validity of her illnesses, doctor's visits and the amount of sick time she was using. Hayes also

accused Plaintiff of faking her disabilities. Additionally, Hayes lied to the owner by reporting that Plaintiff was faking her disability because Hayes supposedly saw Plaintiff saw her holding her cell phone with her shoulder as she was walking into the building.

16.     On or about April, 2015, Plaintiff began complaining to Dr. Kennedy III, about being harassed, discriminated and retaliated against by Hayes. After Plaintiff complained the harassment, discrimination and retaliation got worse.

17.     On or about June 2015, Plaintiff was re-assigned and relocated to a new desk with a broken chair and a phone that was not equipped with a head set. Plaintiff immediately advised Hayes that a replacement chair and headset were necessary. Due to her disabilities, Plaintiff is not able to hold the phone with her shoulder when she needed to use her hands for writing or typing while on the phone, as doing so aggravates Plaintiff's arthritis and back pain, and her job required frequent and lengthy phone conversations. Hayes allowed Plaintiff to swap-out a chair from a different desk and told Plaintiff that Brandon Huebner would be ordering a headset for her desk phone.

18.     On or about July 9, 2015, Hayes harassed Plaintiff by blaming her poor attendance on illegal drug use and by accusing her of being a "drug user." That same day Plaintiff was forced by Hayes to take a urinalysis (which came back clean).

19.     It was not until over one month after her request, on or about July 16, 2015, that Plaintiff finally received a head set. Then on July 20, 2017, Hayes again moved Plaintiff to yet a different desk which – AGAIN – had NO HEADSET. On that same day, Plaintiff complained to Dr. Kennedy Jr., about Hayes' discriminatory, harassing and retaliatory actions toward Plaintiff.

20.     A few days later, on or about July 23, 2015, Plaintiff and her (then) boyfriend were arguing and had an altercation which resulted in the boyfriend hitting Plaintiff in the face. The

argument continued through the night and into the next day, causing Plaintiff extreme exhaustion which resulted in a fainting spell. When Plaintiff fainted, her chin hit the ground and split open resulting in Plaintiff needing 23 stitches.

21.    When Plaintiff returned to work with a black eye and 23 stitches in her chin, apparently Hayes became alarmed and staged an intervention by secretly contacting Plaintiff's sister, Amy Piaz,  brother, David Franco, and uncle, Isreal Gomez. When Plaintiff returned back to work from lunch to find her family members there to "intervene" in her situation, Plaintiff had an emotional break down.

22.    Plainitff then asked Hayes if she could leave work early. Hayes granted Plaintiff's request and told Plainitff she could take as much time off as she needed.

23.    A few days later, Plaintiff requested to return to work and was advised by Hayes that she could not return to the office unless she was granted a protective order against her boyfriend.

24.    On or about July 31, 2017, Plaintiff made an appointment with the Nueces County District Attorney's office to assist her with getting a protective order in place.

25.    At that same time, because of the physical violence and emotional turmoil Plaintiff was going through, she became severely emotionally unstable as her disgnosed anxiety disorder exacerbated into a serious health condition that made Plaintiff unable to perform the essential functions of her job. For that reason, on or about July 31, 2017, Plaintiff asked Hayes if she could take leave pursuant to the Family and Medical Leave Act. Despite her previous offer to allow Plaintiff to take as much time off as she needed, Hayes denied Plaintiff's request for FMLA leave, explaining to Plaintiff that FMLA leave was not available to her.

26.    A few days later, Plaintiff was fired.

27.    After being fired, Plaintiff filed a formal request for FMLA leave with the U.S.

Department of Labor, which curiously was approved by Defendant. Defendant never re-hired or offered to re-hire Plaintiff, therefore, Plaintiff was never allowed to use her approved FMLA leave.

**IV.**
**COUNT I:**
**VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT**

28.     Plaintiff alleges Defendant's unlawful actions in taking adverse actions against Plaintiff for requesting leave for her own serious health condition, that made Plaintiff unable to perform the essential functions of her job, violates the Family and Medical Leave Act, justifying an award, *inter alia*, of back pay, front pay, interest, benefits, special damages, expenses, compensatory damages, liquidated damages, and punitive damages against Defendant.

**V.**
**COUNT II:**
**VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990**

29.     By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that Defendant maintains a pattern and practice of discriminating against disabled Americans, such as Plaintiff, in its employment practices. More specifically, Defendant, through its acts and omissions, unjustifiably terminated Plaintiff because she suffers from a disability, thereby resulting in the disparate treatment of Plaintiff.

30.     By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that she suffers from a mental impairment that substantially limits one or more major life activities.

31.     By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that she was hired by Defendant and, *ipso facto*, was qualified for the position of Dental Assistant and Credentialing Coordinator based upon the requisite skill, experience, education and other job-related requirements for the position, as shown by the actions of Defendant.

32.     By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that she can perform the essential functions of her job. Moreover, Plaintiff pleads that Defendant knew an accommodation was necessary, was available and had previously been provided Plaintiff, yet Defendant failed to continue to provide said accommodation.

33.     By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that her disability was the sole and/or another improper reason for Defendant's decision to terminate her employment, resulting in its disparate treatment of Plaintiff.

34.     Further, and in the alternative, Plaintiff pleads that she suffers from a physical impairment that is substantially limiting only because of the attitudes of others, including Defendant, toward the impairment.

35.     Further, and in the alternative, Plaintiff pleads that she may not suffer from an impairment that limits a major life activity at all, but is "regarded as" suffering from a substantially limiting impairment, as that term of art is defined by the ADA.

36.     Further, and in the alternative, Plaintiff pleads that Defendant utilized qualification standards, employment tests or other selection criteria, that serve to screen out or tend to screen out an individual with a disability or a class of individuals with disabilities and that said standards, tests, and other selection criteria are inconsistent with business necessity. The aforementioned discriminatory labor and employment law practices result in a disparate impact upon Plaintiff and similarly situated individuals, *in genere*.

## VI.
## DAMAGES

37.     Plaintiff pleads that Defendant, and its agents, employees and representatives, have caused Plaintiff grievous harm and damages. As a direct and proximate result of their violations of state and federal law, Defendant has caused Plaintiff to suffer lost past and future wages.

Plaintiff is entitled to pecuniary damages for lost past and future wages to be determined at inquest.

38.     Plaintiff pleads that Defendant has caused her to suffer acute mental anguish including, but not limited to, extreme emotional distress and mental pain, intense feelings of depression, low self-esteem, humiliation, belittlement, shame, nausea, loss of sleep and appetite. Plaintiff will, in all likelihood and for the balance of her life, continue to suffer mental anguish. As such, Plaintiff is entitled to compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

39.     Plaintiff pleads that Defendant violated Plaintiff's civil rights with malice or reckless indifference to her federally protected rights. As such, Plaintiff is entitled to punitive damages in an amount to be determined at inquest and at the maximum rate permitted by law.

40.     Plaintiff was forced to secure the undersigned counsel to protect her civil rights and, therefore, requests an award of attorney's fees.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon final trial on the merits, she recover judgment against Defendant, said judgment entitling Plaintiff to:

1.     Compensation for all reasonable damages suffered by Plaintiff, including, but not limited to, past and future wages and other compensation, in an amount to be determined upon inquest;

2.     Compensation for compensatory and punitive damages, in an amount to be determined upon inquest;

3.     Pre-judgment and post-judgment interest, at the maximum rate permitted by law;

4.     All costs of court expended in this lawsuit;

5.     Reasonable and necessary attorney's fees;

6.     A mandatory injunction reinstating Plaintiff's employment and employment

benefits, retroactive to fees retroactive to the date of Plaintiff's termination.

7.      A mandatory injunction forbidding Defendant from violating rights secured by Title I of the Americans With Disabilities Act of 1990;

8.      A mandatory injunction forbidding Defendant from violating rights secured by the Family and Medical Leave Act; and

9.      Such other and further legal relief, either at law or equity, to which Plaintiff may be justly entitled.


Respectfully submitted,

**GALE LAW GROUP, PLLC**
711 N. Carancahua St., Suite 514
Corpus Christi, Texas 78401
Mailing Address:
P.O. Box 2591
Corpus Christi, Texas 78403
Phone Number: 361-808-4444
Fax Number: 361-232-4139

By: */s/ Amie Augenstein*
Amie Augenstein
Amie@GaleLawGroup.com
*Attorney-in-Charge for Plaintiff*
Texas Bar No. 24085184
Southern District Bar No. 2236723

*/s/ Christopher J. Gale*
Christopher J. Gale
Chris@GaleLawGroup.com
*Attorney for Plaintiff*
Texas Bar No. 00793766
Southern District Bar No. 27257

## Demand for Jury Trial

Plaintiff hereby demands trial by jury pursuant to Fed. R. Civ. P. 38(b).